AB:RJN

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

JOHN WATSON,
              Defendant.

C O M P L A I N T

(T. 18, U.S.C.,
§ 1071)

- - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

       THOMAS KENNEDY, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

       Upon information and belief, on or about and between May 18, 2010 and September 11, 2010, both dates being approximate and inclusive, in the Eastern District of New York and elsewhere, the defendant JOHN WATSON, did harbor or conceal a person for whose arrest a warrant and process has been issued under the provisions of the laws of the United States, to wit: Joseph Lubrano, an individual who was indicted on May 13, 2010 for racketeering and racketeering conspiracy, in violation of 18 U.S.C. §§ 1962(c) and (d), so as to prevent his discovery and

arrest, after notice and knowledge of the fact that a warrant or process has been issued for the apprehension of such person.

(Title 18, United States Code, Sections 1071 and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.  I am a Special Agent with the Federal Bureau of Investigation, where I have served since 2002. I am currently assigned to the Organized Crime division. Prior to becoming a Special Agent with the FBI, I served as a Special Agent with the Drug Enforcement Administration for over three years. I have experience investigating matters involving armed robbery, attempted robbery, other violent crimes, racketeering activities, money laundering and other illegal activities. I have participated in the investigation of this matter, and I am familiar with the information contained in this affidavit based on my personal participation in the investigation, my review of documents, my conversations with other law enforcement officers and others about this matter, and my own training and experience.

2.  As set forth below, there is probable cause to believe that the defendant, JOHN WATSON, harbored or concealed Joseph Lubrano, an individual for whom an indictment has been

---

[1] Because the purpose of this Affidavit is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3

returned and an arrest warrant was issued on May 13, 2010. A copy of the indictment and arrest warrant are attached.

3. On May 13, 2010, an indictment charging Joseph Lubrano and others with racketeering and racketeering conspiracy, in violation of 18 U.S.C. §§ 1962(c) and (d), was returned by a grand jury in the Eastern District of New York. In particular, Joseph Lubrano is accused of being a captain of the Luchese organized crime family of La Cosa Nostra and was charged with predicate acts of state and federal robbery conspiracy, in violation of New York Penal Law 160.15 and 18 U.S.C. § 1951(a) respectively.

4. On May 18, 2010, I attempted to locate Joseph Lubrano in order to arrest him pursuant to the arrest warrant that was issued in conjunction with the indictment, but was unable to locate Joseph Lubrano. A member of the government received a telephone call from an individual purporting to be an attorney. This caller informed the government that Joseph Lubrano wanted to surrender in two weeks, when the caller's father, Joseph Lubrano's lawyer, returned to New York from a trip abroad. This caller was asked to inform Joseph Lubrano that unless he surrendered immediately, he was considered a fugitive from justice and federal agents would continue in their efforts to locate him.

4

5.  On or about June 1, 2010, I received a telephone call from the attorney purporting to represent Joseph Lubrano (the father referenced above in paragraph 4), and I was informed that Joseph Lubrano would surrender in two days. However, I subsequently received another phone call from the attorney purporting to represent Joseph Lubrano, and was informed that the attorney was continuing his efforts to convince Joseph Lubrano to surrender.

6.  On May 18, 2010 and thereafter, I and other law enforcement agents, including FBI agents as well as Detectives from the New York Police Department, continued our efforts to locate Joseph Lubrano.

7.  Previously, I was informed by two cooperating witnesses ("CW1" and "CW2")[2] that Joseph Lubrano runs a social club located at Cambreleng Avenue and East 188th Street in the Bronx, New York. CW1 and CW2 advised that they had met with Joseph Lubrano at this location on several occasions to conduct criminal business related to the Luchese organized crime family.

---

[2]  CW1 and CW2 have each pled guilty to racketeering, in violation of 18 U.S.C. § 1962(c), Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a), and the unlawful use of a firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). They are cooperating with the government in the hopes of receiving a more lenient sentence. Their information has been corroborated by, among other things, statements of other cooperating witnesses, confidential sources, and civilian witnesses, surveillance and phone records.

5

CW2 identified the building in which Joseph Lubrano runs the social club.

8. Prior to Joseph Lubrano's indictment, I had conducted surveillance in the vicinity of the social club at Cambreleng Avenue and East 189th Street in the Bronx. On at least two occasions, I observed Joseph Lubrano together with another individual, who I later identified as the defendant JOHN WATSON.

9. After Joseph Lubrano's indictment was returned, in an effort to locate him, I again conducted surveillance of the social club on several occasions. In particular, on May 18, 2010, I observed the same individual who I had previously seen with Joseph Lubrano. I approached this individual who identified himself as JOHN WATSON. He acknowledged that he knows Joseph Lubrano, but stated that he did not know where Joseph Lubrano was located. I informed WATSON that a warrant had been issued for Lubrano's arrest, and that WATSON should provide the FBI with any information about Lubrano's whereabouts and should not attempt to conceal Lubrano's location.

10. Rental records confirm that the social club is rented to JOHN WATSON. On or about May 19, 2010, I again conducted surveillance of the social club. I observed an individual in front of the social club who identified himself as

Case 1:10-cr-00010-ENV   Document 111-1   Filed 09/13/10   Page 6 of 10

6

the landlord for the building and provided a description of WATSON's car.

11. Subsequently, I received a tip indicating that Joseph Lubrano was observed in a car similar to the car described by the landlord of the social club. According to the tip I received, Joseph Lubrano was being driven by an unknown male.

12. On June 12, 2010, I located a 1991, white Lincoln with a blue cloth top and missing front license plate in the vicinity of East 188th Street and Cambreleng Avenue in the Bronx, New York. This matched the descriptions I had previously received of WATSON's car. I surveilled the vehicle and observed WATSON enter the car and drive away. I attempted to follow him, but he began to drive in and out of parking lots, and ultimately, I was not able to follow him to his destination. Based on my experience and training as a Special Agent, it is my belief that JOHN WATSON was aware that he was being followed by law enforcement agents and was purposefully evading our efforts to follow him.

13. On or about June 18, 2010, I placed a GPS device on the Lincoln to monitor its location. The device does not utilize any battery power from the car itself.

14. In or about July or August 2010, I was informed by a witness that s/he had seen Lubrano walk into an apartment building on East 187th Street, Bronx, New York. I interviewed

7

the manager of the building located at 626 East 187th Street, Bronx, New York, which is around the corner from the social club. The manager informed me that he rented an apartment to Lubrano, and that he has observed WATSON enter Lubrano's apartment on several occasions. However, he also advised that he has not seen Lubrano in the apartment for the past few months.

16. On July 29, 2010, data from the GPS device installed on WATSON's car indicated that WATSON's car had traveled from the Bronx to Staten Island, in the vicinity of Charleston Street. An individual living in a residence on that street was interviewed by law enforcement agents and reported that an individual matching Lubrano's description had stopped by and asked for the Cutaia family. Joseph Cutaia, Salvatore Cutaia, Salvatore Cutaia Jr., Anthony Cutaia and Domenico Cutaia are Lubrano's co-defendants, and their family members previously lived on Charleston street in Staten Island. Based on this information, it is my belief that WATSON drove Lubrano to Staten Island on July 29, 2010.

17. On August 17, 2010, I spoke to WATSON in the hallway of his residence at 2459 Cambreleng Avenue, Bronx, New York. I again advised him that Lubrano was a fugitive and asked whether he knew Lubrano's whereabouts. WATSON advised that he did not.

8

18. I was informed by an individual walking into a building near Lubrano's residence at East 187th Street that Lubrano appeared to be dating a woman who drove a luxury Sports Utility Vehicle ("SUV"). In addition, I received other information from various sources, including from confidential sources, regarding Lubrano's girlfriend. I was informed that Lubrano was staying with her and that she drives a white Porsche with New Jersey license plates. I performed various database checks, including a review of all Porsches registered in New Jersey, and, using the registration information in conjunction with the information I had received from witnesses and confidential sources, I concluded that Lubrano's girlfriend is "Jane Doe."

19. With this information, I was able to determine that the individual I believed to be Lubrano's girlfriend, Jane Doe, was linked to two addresses, one in New Jersey and one in Yonkers, New York. Between June 18, 2010 and September 11, 2010, on at least two occasions, the GPS data from the GPS device installed on WATSON's car indicated that the car was located in Yonkers, New York, in the vicinity of Jane Doe's address.

20. I have performed several database checks, none of which indicates that WATSON resides at this location in Yonkers.

21. On September 11, 2010, around 3:30 pm, law enforcement agents observed WATSON walking towards the apartment

building at Jane Doe's address. They observed WATSON talk to Jane Doe, who had just exited the apartment building. WATSON carried what appeared to be dry-cleaning. After talking to Jane Doe, WATSON entered the apartment building. During that time, law enforcement agents located WATSON's car around the corner from the residence. About forty minutes later, agents observed WATSON drive out of the parking garage of the building in Jane Doe's white Porsche SUV. I suspected that WATSON had delivered the package that appeared to be a package containing dry cleaning to Lubrano in Jane Doe's apartment, and therefore, I stopped WATSON, who was held until Lubrano was found in Jane Doe's apartment.

22. After it was determined that WATSON was driving alone, I entered the residence and arrested Lubrano who was alone in Jane Doe's apartment. Lubrano refused to surrender for approximately 15 minutes, but ultimately, he came out of the room in which he was hiding and was placed under arrest. After Lubrano was found, WATSON was also placed under arrest.

10

WHEREFORE, your deponent respectfully requests that the defendant JOHN WATSON be dealt with according to law.

_____
THOMAS KENNEDY
Special Agent
Federal Bureau of Investigation

Sworn to before me this
13th day of September 2010

_____
The Honorable Robert M. Levy
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK