The Honorable Eric N. Vitaliano
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

UNDER SEAL
Re: <u>United States v. Joseph Lubrano</u>
Docket No. 10-CR-010-(S-6)-12

Your Honor:

Please receive this letter in anticipation of sentencing.

Joseph Lubrano pled guilty on April 1, 2011 before your Honor to Count One of an indictment pursuant to the April 1, 2011 Plea Agreement with the government. Count One is a violation of Title 18, United States Code, Section 1962(c). Mr. Lubrano participated in an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, conducted and participated in the conduct of the affairs of that enterprise through a pattern of racketeering activity, consisting of Racketeering Act Nine-Robbery and Robbery Conspiracy and Racketeering Act 10-Robbery and Robbery Conspiracy, in violation of 18 U.S.C. §1962(c).

For the reasons set forth below we seek a sentence of imprisonment within the range of 41 to 51 months as per the Plea Agreement. This request is not intended to diminish the severity of the crime Mr. Lubrano has pled guilty to. Rather, the request is based upon the Plea Agreement reached between counsel for the defendant and the government; the immense disparity between the sentencing guidelines provided by the United States Probation Office and the Plea Agreement due to the inclusion of an overturned conviction; and complete and absolute acceptance of responsibility for his conduct.

1

A. The Importance of Plea Agreements in the Criminal Justice System

In Santobello v. New York, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971), the Court said: "The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged." The Court further noted that properly implemented, a plea agreement procedure is consistent with both effective and just administration of the criminal law.

The Criminal Justice System relies upon plea discussions and pleas of guilty in order to function in an efficient manner. See, e.g., President's Commission on Law Enforcement and Administration of Justice, Task Force Report. The Courts 9 (1967); Note, Guilty Plea Bargaining: Compromises By Prosecutors To Secure Guilty Pleas, *112 U.Pa.L.Rev. 865 (1964)*. This is the conclusion reached in the ABA Standards Relating to Pleas of Guilty § 1.8 (Approved Draft, 1968); the ABA Standards Relating to The Prosecution Function and The Defense Function pp. 243-253 (Approved Draft, 1971); and the ABA Standards Relating to the Function of the Trial Judge, § 4.1 (App.Draft, 1972).

Apart from its administrative importance, plea discussions and pleas of guilty serve as significant forms of summary and definite punishment. As the punishment is quickly and correctly dealt, the significant societal goals of deterrence and rehabilitation of the defendant are initiated. Even further a plea of guilty "avoids the necessity of a public trial and may protect the innocent victim of a crime against the trauma of direct and cross-examination." Cf. Note, "The Influence of the Defendant's Plea on Judicial Determination of Sentence," *66 Yale L.J. 204, 211 (1956)*. The Defendant's acknowledgment of his guilt and willingness to assume responsibility

2

for his conduct is are proper factors for the court to consider. See also ALI, Model Penal Code § 7.01 (P.O.D. 1962); NPPA Guides for Sentencing (1957).

**B. Mr. Lubrano's Plea Agreement was Negotiated by Parties Most Privy to the Case Details and therefore Reaches an Appropriate Sentencing Guideline**

Given the importance of plea agreements to the efficient function of the criminal justice system, it is defendant's position that the present terms of the plea agreement are entitled to deference. Defendant's attorney and the Government have met on numerous occasions to discuss the case with scrutinizing detail in order to negotiate a plea agreement. Rachel Nash, in her capacity as the assigned Assistant United States Attorney ("AUSA"), is thoroughly familiar with the facts and circumstances surrounding Mr. Lubrano's guilty plea. It therefore stands to reason that the result of her negotiations with Defendant's attorney accurately reflect the appropriate sentencing guidelines.

Thus, the Pre-Sentence Investigation Report's departure from the Plea Agreement's sentencing guidelines should be met with skepticism. It seems improbable that the assigned AUSA, the representative of the Government most aware of the intimate details of this case, arrived at a Guideline level of 22 while the United States Probation Office ("USPO") calculated a Guideline level of 34. Assuming that the defendant is in Criminal History Category I, the difference in sentencing is incredibly stark. AUSA Rachel Nash's calculation arrives at a sentencing guideline of 41-51 months while the USPO would contemplate a sentencing guideline of 151-188 months. As such, the difference in the maximum guidelines calculation is a staggering 137 months. The Introductory Commentary to §6B1.1 Plea Agreements expressly states that "policy statements governing the acceptance of plea agreements under Rule 11(c), are intended to ensure that plea negotiation practices…do not perpetuate unwarranted sentencing

3

disparity." The only conclusion that can be drawn is that the current status of Mr. Lubrano's sentencing guidelines is highly violative of this stated policy.

It is Defendant's position that the disparity between the two sentencing guideline calculations supports the calculations derived in the plea agreement between Defense Counsel and AUSA Nash. In the Plea Agreement, the Adjusted Offense Level includes Mr. Lubrano's managerial role in the enterprise pursuant to §3B1.1. At no point in discussions between Defense Counsel and AUSA Nash was there mention of the Specific Offense Characteristics that are included in the Pre-Sentence Investigation Report besides Mr. Lubrano's managerial role. Pursuant to §6A1.3(a) of the Sentencing Guidelines, "in resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." It is Mr. Lubrano's position that AUSA Nash's omission of the upward departure points found in the Probation Report is convincing evidence that the Specific Offense Characteristics were unfounded and without sufficient basis in fact to support inclusion in the plea agreement.

The USPO maintains that that the defendants brandished and possessed firearms, as well as threatened one of the victims with a gun; assaulted, bound with zip ties, and dragged an individual into the defendants' car; sought to steal money and drugs from the victim, who was a drug dealer; and that defendant was a captain who required that Joseph Cutai report to him, provide him a portion of the proceeds of Joseph Cutaia's criminal activities, and discussed those criminal activities with Joseph Cutaia. For the AUSA to fail to include these aggravating circumstances as part of the Adjusted Offense Level would indeed be a glaring omission. Even further, AUSA Nash also would have failed to alert defense counsel as to the presence of several

4

Specific Offense Characteristics that required an addition of **17 points** to the Guideline Sentencing Level. A far more persuasive explanation for what would otherwise be deemed an incredible oversight is that AUSA Nash used her extensive knowledge of the case to arrive at the appropriate sentencing guidelines.

**C. The Criminal History Category Calculated for Mr. Lubrano is Incorrect as it Includes a Wrongful Conviction for which Mr. Lubrano Served 3 ½ Years in State Prison**

The criminal history computations are clearly erroneous in the Presentence Investigation Report. The result of this error is a cumulative points' calculation that is without basis in the record and if implemented, would be a grave miscarriage of justice. First, the Criminal History Computation in the Presentence Investigation attributes 11 criminal history points to Mr. Lubrano. 11 criminal history points is incorrect because it includes the conviction that was overturned in 1999. This conviction is listed as point 191 on Page 41. Mr. Lubrano served 3 ½ years in prison based upon this overturned conviction. To add points to Mr. Lubrano's criminal history despite him serving significant time in a State Prison for a crime he did not commit is shocking to one's conscience and sense of fairness. In essence, after being wrongfully punished, the Probation Department seeks to wrongfully punish Mr. Lubrano again for the same overturned conviction.

Mr. Lubrano's counsel as well as the AUSA had made it clear prior to the issuance of the Presentence Investigation Report that the previously discussed conviction was in error. AUSA Nash has assured defense counsel that she will provide a letter to the Court verifying that she was informed by the FBI that Mr. Lubrano was not responsible for the crime that resulted in his conviction. Nevertheless, the United States Probation Office persists in listing the conviction. The addition of 3 points to a criminal history is a highly serious matter in terms of the effect on

sentencing guidelines. 3 points will add the possibility of a sentence of 10 additional months in a federal prison pursuant to the sentencing guidelines. Pursuant to §4A1.3 (b)(1) STANDARD FOR DOWNWARD DEPARTURE.-"If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." In the interests of justice, these 3 points should be removed.

With the removal of the conviction listed as point 191 on Page 41, Mr. Lubrano can no longer be categorized as a career offender. According to the Federal Sentencing Guidelines §4B1.1, a defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. Mr. Lubrano is not a career offender because he does not meet the criteria of (3) of §4B1.1. The two felony convictions that comprise his record are indicated in points 189-190 and points 195-196 of the Presentence Investigation Report.

Criminal possession of a loaded firearm in the 3rd degree, the felony listed as points 189-190, is not a crime of violence. According to the Federal Sentencing Guidelines §4B1.2. The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

6

The Commentary to the Section further elaborates on the definition of a crime of violence:

> *"Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another*
> ***"Crime of violence" does not include the offense of unlawful possession of a firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. § 5845(a).***

Mr. Lubrano most closely relates to this section of the Commentary which excludes from the category of "Crime of Violence" the unlawful possession of a firearm by a felon. At the time of his conviction for possession of two firearms, Mr. Lubrano had been previously convicted of a Class A misdemeanor. Pursuant to New York Penal Law §265.02 (5)(i), a person is guilty of criminal possession of a weapon in the third degree when "such person possesses a firearm and has been previously convicted of a felony or a class A misdemeanor defined in this chapter within the five years immediately preceding the commission of the offense and such possession did not take place in the person's home or place of business." Thus, Mr. Lubrano engaged in even less culpable conduct than what is rendered inapplicable by the Commentary to the Guidelines. If a "crime of violence" does not include the offense of unlawful possession of a firearm by a felon then it surely does not include the offense of unlawful possession of a firearm by a person previously convicted of a Class A misdemeanor.

Furthermore, NYPL §265.02 (5)(i) does not describe an offense that has as an element the use, attempted use, or threatened use of physical force against the person of another. The crime is in essence a strict liability crime. Thus, mere possession of the firearms by Mr. Lubrano was sufficient to sustain a conviction for criminal possession of a weapon in the third degree.

7

Finally, the conduct set forth (i.e., expressly charged) in the count of which Mr. Lubrano was convicted did not involve use of explosives (including any explosive material or destructive device) nor, by its nature, presented a serious potential risk of physical injury to another. The conduct set forth in the New York Police Department Arrest Report reflects that at the time of his arrest, defendant resisted being handcuffed by flailing his arms. It is self-evident that flailing one's arms does not present a serious potential risk of physical injury.

Therefore, the criminal history computation by the USPO is clearly incorrect. As previously discussed, Guideline 4B1.1 is inapplicable as Mr. Lubrano does not fall under the auspices of "career offender." It cannot be overstated that the inclusion of incorrect criminal history points has very serious consequences with regards to Mr. Lubrano's sentencing. Mr. Lubrano deserves a correct assessment of his criminal history points as the repercussions are significant and life-altering.

**D. Conclusion**

Based upon the above arguments, defense counsel for Mr. Lubrano urges the Court to uphold the Plea Agreement reached between the government and Mr. Lubrano. As currently composed, the presentence report constitutes a major deviation from the appropriate sentencing guidelines due to several errors in calculation. In the interests of justice, the Plea Agreement should be upheld.

Most Respectfully,

Murray Richman

cc: A.U.S.A. Rachel Nash
U.S.P.O. Angelica Deniz